**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | **CASE NO. 1:20-cv-199-NBB-DAS** |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **PLAINTIFF JOHN DOE'S** |
| | ) | **MEMORANDUM OF LAW TO REPLY IN** |
| **MISSISSIPPI STATE UNIVERSITY,** *et al.*, | ) | **SUPPORT OF MOTION FOR A** |
| | ) | **PRELIMINARY INJUNCTION** |
| **Defendants.** | ) | |
| | ) | |

Plaintiff John Doe ("John"), by and through counsel, hereby files his Memorandum of Law to his Reply in Support of his Motion for a Preliminary Injunction (the "Memorandum").

## I. INTRODUCTION

This Court should grant John's Motion for a Preliminary Injunction (Doc. #5), thereby ordering Defendant Thomas Bourgeois ("Dr. Bourgeois") to vacate the four-year suspension imposed on John by Defendant Mississippi State University ("MSU") (together with Dr. Bourgeois, the "MSU Defendants") and removing all reference to the same from his academic record. The MSU Defendants' Opposition and Memorandum of Law in Support (Docs. #24, 26) (collectively, the "Opposition") is grounded in two faulty premises: (1) John "confessed" during his initial meeting with investigators; and (2) MSU Defendants properly followed all necessary procedures. Each argument is defective.

John did not "confess" during his meeting with investigators. Rather, the investigators walked into the meeting equipped and intending to question John, who had no indication as to the purpose of the meeting. The investigators interpreted John's attempts to explain himself as a confession, a gross misunderstanding that John attempted to correct throughout the entire

{K0817695.4}  1

disciplinary process. John has since clearly reiterated, both verbally and in writing, that he <u>did not</u> confess and, in fact, did not commit the acts for which he was accused.

MSU Defendants failed to follow necessary procedures. Most significantly, John did not receive proper notice. The Defendants' attempts to paint the verbal notice given to John during his meeting with the investigators as sufficient are unconvincing at best and disingenuous at worst. John arrived at the meeting with no understanding as to its purpose; in contrast, the investigators arrived prepared to question John about the merits of the allegations against him without the assistance of an advisor. Further, John and Jane were treated differently throughout the process: MSU permitted Jane to introduce evidence of her motives while denying John the same opportunity. As Defendants criticize John for what they cast as missteps throughout the process, Defendants overlook the fact that they essentially admit that the preponderance of the evidence standard was not met, and thus, John should have been found not responsible. Accordingly, John respectfully reiterates his request that Court grant his Motion for Preliminary Injunction.

## II. LAW & ARGUMENT

### A. John is Substantially Likely to Succeed on the Merits of his Claims

#### 1. Title IX

John is substantially likely to succeed on his Title IX claim. To succeed on an erroneous outcome theory under Title IX, a plaintiff must allege: (1) particular facts sufficient to cast doubt upon the outcome's accuracy; and (2) particular circumstances suggesting gender bias in part motivated the erroneous finding. *Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 607 (S.D. Miss. Jan. 16, 2019). Among other ways, gender bias may be demonstrated by evidence of "procedural flaws or statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Pacheco v. St.*

*Mary's Univ.*, 2017 U.S. Dist. LEXIS 94510 at *47 (W.D. Tex. June 20, 2017) (internal quotations omitted). MSU Defendants attempts to defeat John's claims are unavailing. Explained in more detail below, John did not receive proper notice, MSU Defendants disregarded John's attempts to clarify his statements, and *Doe v. Oberlin College* is directly on point and perfectly encapsulates Defendants' failure to establish responsibility by a preponderance of the evidence.

### a. *MSU Defendants failed to give John proper notice*

The email sent to John informing him of the meeting was completely insufficient to put him on notice. MSU Assistant Director, Office of Student Conduct Nick Gordon's ("Mr. Gordon") email gave John no indication as to the substance of the allegations against him, if any, the identity of his accuser, or any additional details. *See* Doc. # 3-1 at pg. 1-2. Recognizing that this email does even come close to effective notice, MSU Defendants claim that the meeting was scheduled so that John could receive proper notice verbally. This argument fails and is directly refuted by Defendants' own actions.

As an initial matter, Defendants fail to realize that their framing of the incident still leaves MSU in violation of Title IX standards and its own Policy. MSU failed to provide John with written notice sufficiently in advance of the meeting so that he could adequately prepare, in violation of Title IX. *See* 34 CRF § 106.45(b)(2)(i)(B).[1] Similarly, MSU denied John sufficient time to prepare to participate in the meeting, in violation of the Policy. Doc. # 1-2 at pg.12.[2] Rather, MSU sent an email that failed to provide John with any indication as to the purpose of the meeting. Indeed, John

---

[1] 34 CRF § 106.45(b)(2)(i)(B) states in part that a university must provide an accused student with <u>written</u> notice that in part must include "sufficient details known at the time and with sufficient time to prepare a response before any initial interview." The notice further requires a statement that the respondent is presumed not responsible and that he is entitled to an advisor.

[2] The Policy notes in part that "Parties will be afforded reasonably sufficient time prior to any hearing, interview, or meeting to confer with any advisor or otherwise prepare to participate."

arrived thinking the meeting was to discuss a classmate who had been accused of plagiarism. *See* Doc. #30 at pg. 88.

Defendants were fully aware that John did not know the purpose of the meeting, but still arrived prepared to bombard John with a sexual misconduct allegation before proceeding immediately to a fully investigatory meeting. Indeed, the investigators appeared to bring their notes from the meeting with Jane so as to question John about specific "facts." A review of the notes reveals that they were transcribed in different color ink and thus necessarily were recorded at different times. *See* Doc. #30-5. It is unclear what notes the investigators actually took during the meeting, or which were already prepared for the investigators to simply fill in. In bringing these notes, the investigators were clearly prepared to conduct a detailed interview. Yet still, Defendants blame John for not asking questions in advance of the meeting and only offering his availability to meet, while simultaneously claiming that John was only contacted for scheduling purposes. MSU cannot have it both ways.

Defendants list a number of reasons as to why giving notice verbally and in person is a good practice. In part, they assert that personal notice is in fact for the benefit for the accused, otherwise, "there exist[s] the potential risk[] of an accused going to the complainant, apologizing, and essentially confessing." Doc. #26 at 15. Ironically, this is precisely the situation in which they claim John found himself. If Defendants were truly passionate about protecting this right of an accused, there is no reason why they could not verbally give notice to the student before scheduling a follow-up interview where the student could bring an advisor.

Instead, John was blindsided with Jane's allegations. He attempted to explain his and Jane's past relationship and referred briefly to various interactions between the two, attempting to find any comparable situation. MSU Defendants interpreted these efforts as an "unequivocal"

{K0817695.4} 4

confession. Defendants' insistence begs the question why the school continued to move forward with the Title IX process. If Defendants truly thought that John had accepted responsibility in accordance with the Policy, they could have asked that he sign a document to that effect and proceed directly to sanction. Defendants repeatedly mention John's alleged confession, yet fail to explain why, if that was the case, they felt the need for a hearing.

Moreover, Defendants claim that the investigators' questioning was appropriate, and place all blame on John for not ending the meeting. But as stated, investigators arrived with every intent to discuss the merits of the allegations. As stated by Mr. Gordon at the Title IX hearing, he and Compliance Specialist Lateshia Butler ("Ms. Butler") "kind of explain[ed] what the questioning is and then we get into it. We start asking questions." *See* Doc. # 30 at pg. 65. He further noted that "we started with letting him know what we were there to talk about and we asked what happened essentially and kind of let him carry the conversation a little bit." *Id.* at pg. 66. Additionally, each investigator arrived with a checklist of things to cover. *See* Doc. # 30-5. Mr. Gordon and Ms. Butler were fully prepared to interview John and review Jane's allegations in detail. Any claim that John's statements that day were "spontaneous" is belied by the investigators own preparation and statements at the Title IX hearing. For the same reasons, Defendants did deny John the right to an advisor: they arrived at the meeting intending to question John knowing he did not have the opportunity to consult an advisor.

Lastly, MSU Defendants failed to provide John with a date of the alleged incident, which Jane has never provided. Defendants attempt to dismiss this as a "red herring." This argument is a gross oversimplification. MSU Defendants claim that a date need only be provided if known, relying on 34 C.F.R. § 106.45(b)(2)(i)(B) in support.[3] In fact, this provision points to numerous

---

[3] MSU Defendants' reliance on 34 C.F.R. § 106.45(b)(2)(i)(B) is bewildering. In doing so, they discredit their own arguments. Just paragraphs in the Opposition earlier, the MSU Defendants alleged that John was not entitled to

{K0817695.4} 5

circumstances sufficient to put an accused on notice. In this instance, Jane's failure to provide a date is significant. John and Jane were a romantic couple at the alleged time of the incident and had consensual sexual intercourse frequently. Months after the fact, Jane cherry-picked a four-day time period. John could not reasonably be expected to have notice of the incident without more details. Jane's failure to provide a date, in conjunction with MSU's failure to give John proper notice of the remaining allegations against him and the identity of his accuser, makes clear that the notice was insufficient. These Title IX regulation and MSU Policy violations are clear evidence of the procedural flaws that support a Title IX claim.

### b. *MSU rejected John's attempts to clarify his statements and excluded his evidence of motive, while permitting Jane to introduce her own evidence of motive*

MSU Defendants claim that John had the opportunity to clarify his statements. John in fact clarified his statements numerous times during the hearing. He repeatedly stated in no uncertain terms that he did not sexually assault Jane, nor did he confess during the meeting. *See* Doc. #30 at pg. 39-40, 42, 79-81, 89-90. John further submitted substantial corrections to each draft of the hearing memorandum, in which he emphatically denied having sexually assaulted Jane and noted feeling blindsided in the meeting. *See* Doc. #30-15 at pg. 5. Rather than accept John's clarifications, MSU Defendants characterized John's corrections as John changing his story. Defendants then pitted Mr. Gordon and Ms. Butler against John. *See* Doc. # 30-8 at pg. 1.

John attempted to introduce numerous communications from Jane to demonstrate that her report was retaliatory. Specifically, he included emails and text messages along with his hearing memorandum revisions to demonstrate her motive to lie. *See* Doc. #30-15. MSU prevented John

---

written notice prior to the meeting and that orally providing him with the information minutes before asking him to address the merits of Jane's allegation was sufficient. This argument is directly refuted by 34 C.F.R. § 106.45(b)(2)(i)(B).

from introducing these exhibits. Defendants assert that John was not prejudiced because the fact that Jane was upset by their breakup was undisputed. In doing so, Defendants effectively strip all significance attached to these communications. The exhibits contain powerful language from Jane that conveys just how upset she was with John after the breakup. *See Id.* In blandly stating that Jane had admitted that John initiated the breakup, MSU Defendants denied John the opportunity to provide any context to the situation and persuasively demonstrate Jane's motive.

More crucially, MSU Defendants treated Jane differently, in violation of the Policy[4] and Title IX. While dismissing John's evidence of her motive as "irrelevant," MSU permitted Jane to introduce evidence of her own motives. Specifically, Jane claimed that she "didn't realize" John's "actions" constituted sexual assault at the time of the alleged incident. Rather, she claimed to have reached this conclusion only after speaking with a sexual assault advocate. *See* Doc. #30 at 18-19. MSU Defendants permitted Jane to introduce this evidence of her motive for delayed reporting. Permitting Jane to introduce testimony that spoke to her motive while denying the same right to John is unmistakable evidence of the two students being treated differently due to sex in violation of Title IX.[5]

### c. *Doe v. Oberlin College is directly on-point regarding the failure to establish responsibility by a preponderance of the evidence*

MSU Defendants attempt to distinguish the facts of this case from those in *Doe v. Oberlin College*, but *Oberlin* is directly on point. *See Doe v. Oberlin Coll.*, 963 F.3d 580 (6th Cir. 2020). While numerous comparisons can be drawn between the two, the critical similarity lies in the

---

[4] The Policy notes that "All parties to a sexual misconduct investigation will have equal rights throughout the resolution process and will have an equal opportunity to present relevant witnesses and other evidence if a hearing is necessary." *See* Doc. #1-2 at pg. 12.

[5] To the extent that MSU Defendants seek to frame this as an anti-respondent, rather than anti-male, bias, courts have already rejected this argument as a "distinction without a real difference." *See Doe v. Univ. of Denver*, 952 F.3d 1182, 1203 (10th Cir. 2020).

failure to establish responsibility by a preponderance of the evidence. In *Oberlin*, the court noted that the student's strongest evidence of gender bias was the merits of the decision. *Id.* at 586-587. The court noted that, when the degree of doubt on the accuracy of the hearing outcome passes from articulable to grave, "the merits of the decision itself, as a matter of common sense, can support an inference of sex bias." *Id.* at 588 (*citing Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019), noting that a "perplexing" basis of a decision in a he said-she said situation can support an inference of sex bias).

Here, too, some of John's most powerful evidence lies in the inexplicable decision of MSU to find him responsible. Defendants unsuccessfully attempt to differentiate John's case from *Oberlin* by claiming that MSU abided by its own policies, provided John with necessary notice, and "allowed" John to change his story. As explained, MSU did not abide by its own policies and John's "notice" was woefully deficient. Defendants' characterization of "allowing" John to change his story directly contradicts their own argument that he did have the opportunity to clarify his statements. Their claim that John's "position was constantly changing throughout the process" is misleading. John's explanation did not change – Defendants claimed that John's disjointed statements during the meeting (as he attempted to understand Jane's allegation) amounted to a confession. Once John realized the investigators considered him to have confessed, he steadfastly denied having done so, up to and throughout the hearing. *See* Doc. #30 at pg. 79-80.

In Defendants' quest to place the blame on John, they effectively admit that the preponderance of the evidence standard was not met. The Opposition remarks:

> Doe now complains that MSU added an additional person (Doe's friend) as a witness shortly before the hearing. Even now, he seems to ignore that the friend's testimony would have been primarily helpful to him and not Roe, as this witness could have testified that Roe did not mention a sexual assault during her initial conversations about that night. Doe should have known this: MSU spelled out this point in literal red letters in a draft of a Hearing Memorandum shared with his

>attorney, and it granted a continuance for Doe's attorney to investigate the witness further. Inexplicably, Doe failed to ask that witness any questions about this issue at the hearing.

Doc. #26 at pg. 2. Defendants admit that the testimony of Jane's friend did not corroborate Jane's own account. Rather than acknowledge the significance of this, MSU Defendants criticize John for not questioning the friend to make this point clearer. Defendants further acknowledge that they were aware of the significance of this testimony, as they "spelled out this point in literal red letters." MSU abdicated its obligation to establish responsibility by a preponderance of the evidence, and inappropriately shifted the burden to John to prove his innocence in a process that worked against him from the outset. The fact that Jane's story was undermined by her own witness demonstrates that the preponderance of the evidence standard was not met. This situation is precisely the type of grave doubt in a hearing outcome's accuracy that supports an inference of gender bias, in violation of Title IX.

### 2. Procedural Due Process

John is also substantially likely to succeed on his § 1983 Due Process claim. The amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (1) the student's interests that will be affected; (2) the risk of an erroneous deprivation of such interests through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the university's interests, including the burden that additional procedures would entail. *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017).

#### a. *John has substantial interests at stake*

John has readily identifiable interests that are entitled to substantial weight. MSU claims that John's sanction is temporary and all harm that he may suffer is speculative. This position is a gross oversimplification. While his suspension spans four-years, the effects of the suspension are

not subject to such a time limit. Just semesters from graduation, John's life will now be on hold for nearly half a decade. John must then complete his education before entering a job market where he will compete with other recent graduates whose education was not unduly interrupted. Furthermore, he will face questions regarding the delay in obtaining his degree. These are precisely the interests recently acknowledged by the Southern District of Mississippi, which quickly concluded that a student had a liberty interest in his higher education that was "easily identified." *Univ. of Miss.* at 609. MSU Defendants claim John's injury is nullified because once his suspension has been in place for a year, he is eligible to request that it be reviewed. Defendants' actions up to his point offer John no confidence that such a request would be taken seriously or given proper consideration.

      b. *MSU's procedures erroneously deprived John of his interests and the value of additional safeguards is clear*

MSU Defendants employed insufficient procedures that wrongfully deprived John of his interests. Explained above, John received highly deficient notice. Mr. Gordon's email to John contained no indication that a serious charge had been levied against him, failed to identify his accuser, and denied him an opportunity to obtain and advisor and meaningfully prepare. Even entertaining Defendants' explanation that the notice was offered to John at the meeting, these actions are still insufficient. John had no time to prepare a response, consult an advisor, or even mentally process the fact that his ex-girlfriend vindictively filed a false claim against him. MSU ambushed John with the allegations, promptly questioned him about the merits, and then refused to hear any explanation that John was not his best self at the meeting. Universities are required to give proper notice so that this very situation is avoided. The notice to John was insufficient, and Defendants' mistakes at the meeting had lasting consequences on the disciplinary process.

MSU Defendants claim that no additional safeguards would have altered the outcome, an assertion that is patently incorrect. With proper notice, John would have walked into the meeting with an advisor and prepared to discuss the substance of the allegations. He would not have been forced to describe various encounters with Jane out loud as he mentally searched for a situation akin to Jane's complaint. Absent the ability to mischaracterize John's statements, Defendants would effectively have been left without any evidence supporting a finding of responsibility. Contrary to MSU Defendants conclusory claim, proper notice would have made all the difference in the world. If given proper notice, John would today be preparing for the Fall semester's final exams, rather than wondering if his future will ever recover.

### c. *The burden on MSU to follow proper procedures is low*

The Opposition bemoans that additional procedures will overwhelm MSU. This litigation would not have come to fruition if MSU dedicated an additional 20 minutes to drafting an email to John, explaining the nature of the allegations against him, identifying his accuser, and notifying him of all rights owed to him, prior to asking about his availability. The vast majority of Title IX funding recipients are able to perform this task at no great cost, and MSU is capable of doing so as well. John would have arrived at the meeting prepared and, indeed, the school would have saved the resources it has expended refuting John's efforts to clarify his statements. MSU Defendants were well within their means to offer John proper notice but failed to do so.

### 3. Substantive Due Process

"The substantive due process analysis asks whether Defendants' conduct was so arbitrary as to shock the conscience." *Pham v. Univ of La. at Monroe*, 194 F. Supp. 3d 534, 546 (W.D. La. 2016). "A dismissed student can succeed on a substantive due process claim if he shows that the

university's decision was not careful and deliberate." *Doe v. Univ. of Miss*. at 614, *citing Guse v. Univ. of S.D.*, 2011 U.S. Dist. LEXIS 34621 at *13 (D.S.D. Mar. 20, 2011).

MSU Defendants' conduct shocks the conscience. MSU sentenced John to a life-altering sanction after a faulty process. MSU Defendants failed to provide John with proper notice, enabling them to claim that John had "confessed." Defendants purport to have given notice this way in part for the benefit of the accused, while dismissing any claim of John's that he felt blindsided by the meeting. MSU Defendants denied John the right to introduce evidence of Jane's motive to file her false report, while granting Jane the right to introduce evidence of her own motive. Defendants admit that had Jane's friend been properly questioned, it would have revealed that Jane's testimony was refuted, of which were already aware. Nevertheless, MSU proceeded to find John responsible by a preponderance of the evidence, even as the standard was not, and could not, be met. Dr. Bourgeois upheld John's four-year suspension with no rationale. MSU's actions were not careful and deliberate, therefore John is highly likely to succeed on this claim.

### B. **Absent Injunctive Relief, John Faces a Substantial Threat of Irreparable Harm**

The Opposition belittles the harm for which Defendants themselves are responsible. The harm John currently faces has no adequate remedy at law and monetary damages are insufficient to rectify it. *See Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Defendants point to the sanction's "expiration date," however there is no expiration date for a permanently damaged reputation, gap in education, and label of a sexual assailant. MSU Defendants claim that John can seek education elsewhere, but they fail to acknowledge that he is near the end of his education at MSU and any transfer would necessarily involve a setback. Nonetheless, several months ago, John did apply for admission at the University of Mississippi. The school questioned John about the disciplinary action on his transcript before ultimately denying his application. John's rejection

from a school with an 88% acceptance rate[6] for which he was otherwise well-qualified demonstrates that his harm is concrete and significant. MSU Defendants further claim monetary damages could compensate John for loss of future earnings, but no amount of damages can repair John's reputation if he is barred from school on the basis that he is a sexual assailant. John undoubtedly faces irreparable harm, for which the remedy must be injunctive relief.

### C. Injury if Injunctive Relief is Denied Outweighs Injury if Such Relief is Granted

The Opposition lists the harms that MSU Defendants claim they will suffer, but none hold a candle to John's injuries absent injunctive relief. Defendants claim that injunctive relief would diminish its power to "deter sexual misconduct through consistent application of its disciplinary rules," yet the rules followed in John's case deviated from MSU's own policy and the Title IX standards that universities are required to follow. In contrast, injunctive relief would make clear that every accused student is entitled to proper notice of the charges against them.

MSU Defendants unconvincingly claim that John's suspension is for Jane's safety, even though Jane has graduated from MSU and moved out of state. Further, in the wake of COVID-19, a great majority of classes are being held virtually. John simply wishes to complete his education and attempt to repair the damage to his life that Defendants have inflicted. Because Defendants' "injuries" if injunctive relief is granted are not injuries at all, this factor falls in John's favor.

### D. The Injunction Will Not Disserve Public Interest

MSU Defendants claim "[t]he public has an interest in a university being permitted to independently investigate and issue appropriate sanctions when its students are found responsible for misconduct." Indeed, but the public <u>does not</u> have an interest in a university failing to offer

---

[6] THE UNIVERSITY OF MISSISSIPPI, https://www.usnews.com/best-colleges/university-of-mississippi-2440 (last accessed Nov. 25, 2020).

basic procedural protections in the course of the investigation. Similarly, no public interest is served where the sanctions imposed far outweigh that which is warranted. In contrast, the public *does* have an interest in ensuring that Title IX requirements are complied with and constitutional rights are not infringed upon. *See Doe v. Wood County Bd. of Educ.,* 888 F. Supp. 2d 771, 778 (S.D. W.V. Aug. 29, 2019), *see also Favia v. Indiana Univ. of Pa.*, 812 F. Supp. 578, 585 (W.D. Pa. Nov. 2, 1992). Injunctive relief will promote the public interest by restoring John to the position he would have been in, had proper procedures been followed. This factor too lies in John's favor.

## I. CONCLUSION

Defendants arguments fail to combat John's risk of irreparable harm and that the factors of injunctive relief lie squarely in his favor. John respectfully reiterates his request that his Motion for a Preliminary Injunction be granted, such that Dr. Bourgeois is ordered to lift his suspension and remove all reference to the disciplinary process and sanction from John's academic record.

Respectfully Submitted,

*/s/ Susan C. Stone*
Susan C. Stone* (Admitted Pro Hac Vice)
Kristina W. Supler* (Admitted Pro Hac Vice)
KOHRMAN JACKSON & KRANTZ, LLP
1375 E. 9th Street, 29th Floor
Cleveland, OH 44114
P: (216) 696-8700
F: (216) 621-6536
E: scs@kjk.com; kws@kjk.com

S. Ray Hill, III (MSB #100088)
CLAYTON O'DONNELL, PLLC
1404 Van Buren Ave., Suite 103
P.O. Box 676
Oxford, MS 38655
P: (662) 234-0900
F: (662) 234-3557
E: rhill@claytonodonnell.com

*Counsel for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Memorandum of Law to Reply in Support of Motion for a Preliminary Injunction has been filed electronically on this 25th day of November, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties not receiving service through the Court's electronic filing system will be served by regular U.S. mail. Parties may access this filing through the Court's system.

> */s/ Susan C. Stone*
> Susan C. Stone